

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0794-15

**ESSIE D. HOPKINS, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIFTH COURT OF APPEALS
## DALLAS COUNTY

HERVEY, J., delivered the opinion of the Court in which MEYERS, JOHNSON, KEASLER, ALCALA, RICHARDSON, and NEWELL, JJ., joined. KELLER, P.J., and YEARY, J., concurred.

## O P I N I O N

Appellant was found guilty of aggravated robbery with a deadly weapon. The State sought to enhance Appellant's punishment under the habitual-offender statute with two prior aggravated assault convictions. TEX. PENAL CODE § 12.42(d). Appellant pled true to those two prior convictions. The trial court accepted Appellant's pleas and found the enhancements to be true. Subsequently, the trial court sentenced Appellant to life

imprisonment. He appealed, arguing in part that the evidence at trial was insufficient to prove the enhancement allegations because the State failed to prove the sequentiality of the two prior convictions. The Fifth Court of Appeals affirmed his conviction, holding that Appellant's plea of true to both enhancements was sufficient evidence to support a finding on those allegations. *Hopkins v. State*, No. 05-14-00146-CR, 2015 WL 3413582, *6 (Tex. App.—Dallas May 28, 2015, pet. granted) (mem. op.) (not designated for publication). We agree and will affirm the judgment of the court of appeals.

**Facts**

Appellant was convicted for aggravated robbery with a deadly weapon for attempting to shoot the complainant as he ran off with her purse. At the punishment phase, the State sought to enhance Appellant's punishment under the habitual-offender statute. The State first alleged in the indictment that Appellant had a prior conviction for aggravated assault with a deadly weapon as follows:

> And it is further presented to said Court that prior to the commission of the offense or offenses set out above, the defendant was finally convicted of the felony offense of AGGRAVATED ASSAULT WITH A DEADLY WEAPON, in the 195TH JUDICIAL DISTRICT COURT of DALLAS County, Texas, in Cause Number F0362924, on the 29TH day of AUGUST, 2003[.]

The State later alleged in a notice pleading that Appellant had a second final conviction for aggravated assault with a deadly weapon. The notice alleged that,

> Prior to the commission of the aforesaid offense by the said ESSIE HOPKINS, to-wit: on the 4th day of January in the CRIMINAL DISTRICT COURT NO. 3 of DALLAS County, Texas, in cause number F09-559-86

on the docket of said Court, the said ESSIE HOPKINS under the name of ESSIE HOPKINS, was duly and legally convicted in said last named Court of a felony, to-wit: AGGRAVATED ASSAULT WITH A DEADLY WEAPON, as charged in the indictment, upon an indictment then legally pending in said last named Court and of which said Court had jurisdiction; and said conviction was a final conviction and was a conviction for an offense committed by him, the said ESSIE HOPKINS, prior to the commission of the offense hereinbefore charged against him, as set forth in the first paragraph hereof[.]

The State did not include the year of Appellant's conviction for the aggravated assault conviction alleged in the notice pleading.

Contemporaneously with the notice pleading, the State also filed a notice of extraneous offenses, which provided Appellant with notice that, either during the guilt or punishment phase, the State might introduce his extraneous offenses of "Aggravated Assault Deadly Weapon," with a "Date Committed (on or about) June 7, 2009, Convicted January 4, 2010, Dallas County, Texas," as well as his "Aggravated Assault Deadly Weapon," with a "Date Committed (on or about) January 2, 2003, Convicted August 29, 2003, Dallas County, Texas."

At the punishment hearing, the State read the enhancement allegations into the record, and Appellant pled true. In response to questioning by the trial court, Appellant agreed that he had been to prison before for the two prior felony convictions listed in the enhancements. The following exchange occurred at the punishment hearing:

[COURT]: Okay. What I'm asking you is the two prior felony convictions, okay?

[APPELLANT]: The other two?

[COURT]: When you went to the pen before.

[APPELLANT]: Oh, yeah.

[COURT]: That's what I'm asking you about. Okay. Are those two prior felony convictions true or not true?

[APPELLANT]: True.

[COURT]: Okay. Are you making those pleas freely and voluntarily?

[APPELLANT]: Freely.

[COURT]: And voluntarily as well?

[APPELLANT]: Yeah.

[COURT]: Okay. No one is forcing you to do this?

[APPELLANT]: No.

Appellant then presented the testimony of his mother, Rebecca Hopkins, for mitigation purposes, and she testified about the same two prior convictions, one for a 2003 aggravated assault with a deadly weapon and one for a 2009 aggravated assault with a deadly weapon. On cross-examination the following exchange occurred:

[STATE]: Now, I want to take you back. Do you know what happened on his 2003 aggravated assault charge?

[WITNESS]: No, I don't.

[STATE]: Do you know who Tamara Bullard is?

[WITNESS]: Oh, yes, that's my niece.

[STATE]: That's your niece?

[WITNESS]: Yeah.

[STATE]: Were you aware that that's the person that he assaulted with a firearm?

[WITNESS]: Yeah, I'm the one [who] called the police. I'm the one [who] called the police on him.

*     *     *

[STATE]: Okay. That was in, what, January of 2003? And he was actually put on probation for that charge, wasn't he?

[WITNESS]: Uh-huh. I think so.

[STATE]: Okay. So he was given an opportunity then to get right, do right, and stay out of prison?

[WITNESS]: Yeah. He got right. Yeah, he didn't go to the pen then, I don't think, right then.

[STATE]: Okay, well, he was -- after he was convicted and he got probation, he eventually had to go to the pen on that charge?

[WITNESS]: Right.

[STATE]: Okay. And he went for five years?

[WITNESS]: Yeah, that's for five, then three.

[STATE]: Okay. Okay. So he didn't make his probation in that case. Do you know what happened in the second case in 2009?

[WITNESS]: Second case?

[STATE]: The second case where he went to the penitentiary?

[WITNESS]: Oh, him and a boy got into it over there by where we live.

[STATE]: Okay.

[WITNESS]: That's when he shot at him or something like that.

* * *

[STATE]: Okay. But you do know it was an aggravated assault charge as well?

[WITNESS]: Uh-huh.

[STATE]: And you also know it involved a firearm as well?

[WITNESS]: Yeah.

[STATE]: Okay. And you said that happened over close to where we live. Do you know what apartment complex that was?

[WITNESS]: Huh-uh. All I know, it was behind Texaco.

* * *

[STATE]: Ma'am if you saw a picture of that apartment complex, would you recognize it as the one where that offense happened?

[WITNESS]: I might.

[STATE]: Okay. Okay. Your Honor, may I approach the witness?

[COURT]: You may.

[STATE]: This is State's Exhibit 1. Does that look familiar to you at all?

[WITNESS]: Yeah, that's them.

[STATE]: Okay. That's the same apartment --

[WITNESS]: Yes, ma'am, that's them.

[STATE]: Okay. Thank you, ma'am. That's the same apartment complex where this 2009 aggravated assault happened?

[WITNESS]: Yeah, because that's what the officer had told me.

The State did not offer evidence of any other aggravated assaults or other extraneous offenses committed by Appellant.

**Discussion**

Section 12.42(d) of the Texas Penal Code provides that a defendant's punishment may be enhanced if:

> [I]f it is shown on the trial of a felony offense other than a state jail felony . . . that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term not more than 99 years or less than 25 years.

TEX. PENAL CODE § 12.42(d). Based on this, to enhance a defendant's punishment range under this provision, it must be proven that the first conviction became final, the offense leading to a later conviction was committed, the later conviction became final, and the defendant subsequently committed the offense for which he presently stands accused. *Jordan v. State*, 256 S.W.3d 286, 290–91 (Tex. Crim. App. 2008).

If, however, a defendant pleads true to an enhancement paragraph, that relieves the State of its evidentiary burden to prove the enhancement allegations,[1] unless the record "affirmatively reflects" that the enhancements were improper. *Roberson v. State*, 420 S.W.3d 832, 838 (Tex. Crim. App. 2013) (citing *Mikel v. State*, 167 S.W.3d 556, 559

---

[1] *Ex parte Rich*, 194 S.W.3d 508, 513 (Tex. Crim. App. 2006).

(Tex. App.—Houston [14th Dist.] 2005, no pet.)).

Here, Appellant's only argument is that, because the sequence of the second allegation in the notice pleading is "not so clear" since the State omitted the year of that conviction, the State was required, under *Roberson*, to present evidence of the sequence, although Appellant pled "true." However, Appellant misreads our decision in *Roberson*.

In *Roberson*, the appellant was convicted of aggravated assault with a deadly weapon and was sentenced to 30 years' imprisonment based on her pleas of "true" to two prior felony convictions. *Id.* at 833. The court of appeals affirmed the judgment of the trial court, and the appellant appealed to this Court, arguing that her two prior felony convictions were improperly used to enhance her punishment range. *Id*. at 835–36. On discretionary review, we reviewed our caselaw, including the rule that a defendant's plea of "true" relieves the State of its evidentiary burden to prove enhancement allegations, and the exception that the evidence to support an enhancement is nonetheless insufficient if the record "affirmatively reflects" that the enhancement was improper. *Id*. at 836. We then noted that the appellant pled "true" to the enhancements and that the record did not affirmatively reflect that the enhancements were improper. *Id*. at 834. Rather, we explained, the record actually supported the enhancement allegations. *Id*. at 840.

Our analysis in *Roberson* applies here as well. Appellant pled "true" to the enhancement allegations, which relieved the State of its burden to prove those allegations. After relieving the State of its burden by pleading "true" to the enhancements, to prevail

Appellant had to show that the record affirmatively reflected that the enhancements were improper.[2] However, as in *Roberson*, not only does Appellant fail to direct us to any record evidence affirmatively showing that the enhancements were improper, the record actually supports the enhancement allegations. Thus, the Fifth Court of Appeals properly applied our caselaw, and we affirm its judgment.

Hervey, J.

Delivered: April 27, 2016

Publish

---

[2]For example, in *Mikel*, the appellant was alleged to have been finally convicted of attempted possession with intent to distribute marijuana and later committing the felony offense of escape, but the record affirmatively showed that the appellant committed the escape offense before her felony possession conviction was final. *Mikel*, 167 S.W.3d at 559. Similarly, in *Sanders*, the court of appeals held that appellant was improperly enhanced to habitual-offender status because the record affirmatively demonstrated that the appellant's predicate conviction was not final before the commission of the primary offense. *Sanders v. State*, 785 S.W.2d 445, 448 (Tex. App.—San Antonio 1990, no pet.).